IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VERNON MCNEAL, | | |
| | Plaintiff, | No. CIV S-02-2524 MCE JFM P |
| vs. | | |
| FLEMING, et al., | | |
| | Defendants. | FINDINGS & RECOMMENDATIONS |
| _____/ | | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the Eighth Amendment by using excessive force against him at High Desert State Prison on September 10, 2001. Defendants' September 16, 2004 motion for summary judgment is now before the court.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On March 21, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

ANALYSIS

I. Facts

   a. Undisputed Facts

     1. On September 10, 2001, plaintiff was housed in administrative segregation for battery on an inmate with a weapon. (Defts.' Statement of Undisputed Facts ("SUF") at 1; (Pl.'s Stmt. to Defts.' SUF, at 3.)

     2. On September 10, 2001, Officer Hatley escorted plaintiff from his cell to the medical office in the D-6 Administrative Segregation building. (Hatley Decl. at 1; Pl.'s Stmt. Undisputed Facts ("SUF") at 1-2.)

     3. Plaintiff straddled a chair with his stomach facing the back of the chair and his hands were handcuffed behind his back. (Fleming Decl. at 1; Pl.'s Dep. at 42.)

     4. Officer Fleming asked plaintiff why he did not want a cellmate. (Deft.'s Undisputed Facts at 1; Pl.'s Complaint at 3.)

     5. "A verbal confrontation erupted in the office." (Pl.'s Complaint at 4.) "[W]e both got angry and we both started screaming back and forth to each other." (Pl.'s Dep. at 48.) "It was a heated argument." (Pl.'s Dep. at 54.) Plaintiff clarified that Officer Fleming was yelling and the other officers were "just standing there watching." (Dep. at 48-9.) Plaintiff "had enough of that and [wanted] to leave. So [he] got [up] out [of his] chair to leave." (Id.) In the videotaped interview, plaintiff recounted, "We [were] arguing back and forth with each other and we all got upset. And I stood up, and when I stood the officers grabbed me. . . ." (Defts.' SUF, Ex. A.)

     6. Defendants Hatley, Fleming and Arnold used force to restrain plaintiff when he stood up out of his chair.[1] (Pl.'s Dep. at 49; Hatley, Fleming and Arnold Decls.)

---

[1] In his opposition to defendants' motion, plaintiff attempts to change his allegations to reflect that when his conversation ended with defendant Martin, defendants Arnold and Hatley were taking him back to his cell when defendant Fleming grabbed his shoulders and started pulling plaintiff toward the floor. (Pl.'s Mem. in Opp'n at 3:19-22.) "When Plaintiff got up out

4

7. While defendants were using force to restrain plaintiff, plaintiff was brought to the ground, with half of his body across the chair. (Defts.' SUF at 3; Pl.'s SUF at 2.)

8. After plaintiff was subdued, he was placed in a holding cell. Plaintiff was evaluated by Medical Technician Barton after being placed in the holding cell. A post-excessive force interview of plaintiff was videotaped. (Defts.' SUF, Ex. A.)

9. Plaintiff has prescriptions for the pain relievers Motrin and Naprosyn.

b. Disputed Facts

Plaintiff contends there were five officers in the medical office in the D-6 Unit with him, including defendants Hatley, Fleming, and Arnold.[2] (Pl.'s SUF at 2; Pl.'s Dep. at 42-43.) Plaintiff states defendant Martin entered the office two to four minutes later. (Pl.'s Dep. at 43; 56.) Defendants contend that defendant Fleming was conducting the interview and defendant Hatley was present during the interview. (Defts.' SUF at 2.) Defendants contend defendant Arnold came into the room only after hearing someone say "sit back down, or get back down." (Id.) Plaintiff contends defendant Martin came into the room before the use of force began and that defendant Martin also jumped on plaintiff. (Pl.'s SUF at 2.) Defendants contend defendant Martin came into the room after the use of force began. (Defts.' SUF at 3.)

Plaintiff contends defendants did not tell plaintiff to sit down but "just grabbed me and jumped on me." (Pl.'s Dep. at 49.) Defendants contend defendants Hatley and Fleming gave plaintiff verbal orders to sit down, but he did not. (Defts." SUF at 2.)

/////

---

[of] his chair to leave with the two escorting defendants Arnold, Hartley how could defendant Fleming perceive this as a threat[?]" (Pl.'s Stmt. to Defts.' SUF at 5, no. 5.) Because plaintiff clearly stated in his complaint and in his deposition that force was used when he stood up following the heated exchange, those facts are included as undisputed. Defendants may use plaintiff's contradictory statements, made under penalty of perjury, to impeach plaintiff's testimony at trial.

[2] Plaintiff contends Correctional Officer Walters was one of the officers present on September 9, 2001. (Pl.'s SUF at 2.) Officer Walters was not named as a defendant herein.

Plaintiff contends defendants Hatley, Martin, Fleming and Arnold unreasonably used excessive force. Plaintiff further contends he did not resist. (Complaint at 4; Pl.'s Dep. at 60.) Plaintiff states defendant Arnold grabbed plaintiff by his left arm and hand and started kicking him in the legs. (Complaint at 4; Pl.'s Dep. at 57-59.) Plaintiff states defendant Hatley had plaintiff by his right arm and his hand, raising his arms up and bending his wrist back and bending his fingers. (Id.) Plaintiff claims an unidentified officer pushed plaintiff in his back. (Id.) Plaintiff contends defendant Fleming had plaintiff by the shoulders, pulling plaintiff toward the floor. (Id.) Once plaintiff was laid across the chair, plaintiff contends the weight of the officers was on his back and hip and knee, and defendants Arnold and Hatley were stepping on the back of his calves and ankles. (Id.; Pl.'s Dep. at 66.) Plaintiff contends one knee was on the chair and the other was on the floor. (Pl.'s Dep. at 66.) At that point, plaintiff alleges he fell from the chair to the floor with more weight of the officers on his back and hip. (Complaint at 4; Pl.'s Dep. at 59, 66.) Plaintiff contends defendant Martin was on him when he fell to the floor. (Pl.'s Dep. at 60.) Plaintiff states all of the defendants were holding plaintiff on the floor. (Id.)

Defendants contend they perceived plaintiff's act of abruptly standing up as a threat, and contend defendants Hatley, Fleming and Arnold used reasonable force in response to plaintiff's refusal to sit down and in response to plaintiff's resistance. (Defts.' SUF at 2; Reply at 5.)

Defendant Martin maintains he did not touch plaintiff and was not involved in using force on plaintiff. (Martin Decl. at 2.) Defendant Martin contends he merely observed defendants Hatley, Fleming and Arnold subdue plaintiff in the medical office. (Id.)

Defendants contend they pushed plaintiff against the wall of the office and plaintiff went down on his knee. (Defts.' SUF at 2.) Plaintiff contends he was not pushed against the wall and could not have been pushed against the wall because there is a cabinet sink on the entire back wall of that room. (Pl.'s Stmt. to Defts.' SUF, at 2.)

/////

6

1  Plaintiff contends he was videotaped under duress and feared for his safety during
2  the videotaping. (Pl.'s Stmt to Defts.' SUF at 3.) In addition, plaintiff contends defendants
3  violated protocol by allowing those defendants involved in the altercation to videotape the
4  subsequent excessive force interview. (Id.)

5  Plaintiff contends the excessive force exacerbated injuries he previously
6  sustained.[3] (Complaint at 4.) Plaintiff was "real sore" the next day in his thumbs, wrists, back,
7  legs and shoulder. (Pl.'s Dep. at 71.) Plaintiff states that as a result of this incident he is having
8  a problem with his hands and wrists, right thumb and left index finger and right ankle, and
9  suffers from pain in his back and hip. (Complaint at 4.) Plaintiff differentiates the current
10 injuries to his shoulder, right elbow and thumbs from his prior work injuries. (Pl.'s Dep. at 72;
11 73-74.) The injuries noted by the MTA after the incident were "[r]ight wrist has some swelling
12 and redness, complains of numbness, thumb, complains of body pain, left hip and right upper
13 back, no redness or injury noted." (Pl.'s Dep. at 75.) Plaintiff contends he also told the MTA
14 that his shoulder and ankles were bothering him, but the MTA did not write that down. (Pl.'s
15 Dep. at 75.) In the excessive force videotaped interview, plaintiff similarly recounted his injuries
16 as a burning sensation in his left groin area, pain in his entire back and right side, redness and
17 swelling to his right wrist, scars on his knees and legs and stinging pain in his right knee every
18 time he stands up. (Defts.' SUF, Ex. A.)

II. Legal Standards

   A. Excessive Force

The use of excessive force by a prison official violates the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1 (1992). Determining whether there has been an Eighth

---

[3] During his deposition, plaintiff explained that before he was incarcerated, he slipped and fell on the job and injured his back and hip and suffered pain in his buttocks going down his left leg and up and down his back. (Pl.'s Dep. at 16; 74.) Plaintiff's workers compensation case was pending at the time of the incident at issue herein. (Id.) Plaintiff was granted an indefinite lower bunk, lower tier chrono, on September 23, 1999, for back pain and a hernia. (Id.)

7

Amendment violation turns upon " 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " See id. at 6 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

To determine whether the use of force violates the Eighth Amendment, the court should consider the "extent of injury . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321); see also LeMaire v. Maass, 12 F.3d at 1454 (considering need for application of measure or sanction complained of, relationship between need and measure or sanction used, extent of any injury inflicted and extent of surrounding threat to safety of staff and inmates); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.1979) (guards may use force only in proportion to need in each situation).

"'Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " Whitley, 475 U.S. at 321-22 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)). That deference extends to prophylactic or preventive measures intended to reduce breaches of prison discipline. Id. But see McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1986) (describing circumstances in which the prison official's use of force was constitutionally excessive). An inmate does not need to have suffered an injury to establish an Eighth Amendment violation. Hudson, 503 U.S. at 7.

Correctional officers may be required to use some measure of force if an inmate refuses a valid order. Whitley, 475 U.S. at 320; LeMaire v. Maass, 12 F.3d at 1451; Michenfelder v. Sumner, 860 F.2d 328, 335 (9th Cir.1988). The appropriateness of the use of force must be determined by the facts and circumstances of each case. Id., 860 F.2d at 336.

A two-part test applies to analysis of the qualified immunity defense. Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) (citing Saucier v. Katz, 533 U.S. 194, 201-02

8

(2001). First, the court looks at "whether the facts alleged 'show [that] the officer[s'] conduct violated a constitutional right," and second, "whether the constitutional right in question was 'clearly established' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Martinez, id. (quoting Saucier, 533 U.S. at 201-02.)

In the instant case, there are genuine issues of material fact in dispute that preclude the grant of summary judgment. The core issue on defendants' motion for summary judgment is whether there is a triable issue of material fact over whether defendants used force against plaintiff "in a good faith effort to maintain or restore discipline," which is defendants' view of the incident, or whether defendants used force "maliciously and sadistically for the very purpose of causing harm" to plaintiff. See Whitley, supra.

In considering an excessive force claim, the court must look to those Hudson factors set forth above. Because this requires sifting through disputed factual contentions, and to draw inferences therefrom, summary judgment in this excessive force context is inappropriate. To defeat summary judgment, plaintiff must show that a reasonable jury could have found that the officers' use of force was excessive. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir.1998). Plaintiff has submitted his own declaration in which he maintains it was excessive force for defendants to bring him to the ground when plaintiff stood up. Plaintiff maintains that the way he was seated, straddling the chair, with his hands handcuffed behind his back, his standing did not pose a threat to officers. (Pl.'s Dep. at 62-3.) Based on plaintiff's verified complaint and his videotaped interview, it is undisputed that plaintiff was angry or upset at the time he stood up. However, it is also undisputed that plaintiff's hands were handcuffed behind his back and that once plaintiff stood up there were at least three officers in the room. Thus, there is a question of fact as to whether there was a need for the application of force.

It is also undisputed that while defendants took plaintiff to the ground, he was partially held over a chair, with the top part of his body on the chair and the other part on the
/////

9

ground.  Plaintiff declares he was not resisting the officers.  (Pl.'s Dep. at 60.)  Defendants contend he was resisting.

As noted above, the amount of force used is also disputed.

If plaintiff's version of the facts are believed, a reasonable jury could find the defendants' use of force in this instance was excessive.

Moreover, although defendants argue that they tempered their use of force because they refrained from throwing, slapping, mauling, striking, or using weapons against plaintiff, the alleged force in the form of forcing plaintiff to the ground over a chair, exacerbating plaintiff's prior work injury, does not seem to be minimal intrusion.  See Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121, 1134-35 (9th Cir.2000), vacated by County of Humboldt v. Headwaters Forest Def., 534 U.S. 801 (2001) (a jury could find that the severity of intrusion by pepper spray alone was more than minimal).[4]  But see Jackson v. City of Bremerton, 268 F.3d 646, 653(9th Cir.2001) (concluding that an intrusion was minimal despite the arrestee's broken finger and irritated eyes).

After review of the entire record, and viewing the record evidence in the light most favorable to plaintiff, the court finds that disputed issues of material fact preclude summary judgment for defendants.  Plaintiff's deposition testimony raises disputes principally over the need for the use of force and the amount of force used by defendants.  The Eighth Amendment proscription against excessive force was clearly established at the time the force was used in 2001.  If plaintiff's testimony is credited, a jury could find that defendants used excessive force in bringing plaintiff to the ground when he stood up from his chair, particularly since plaintiff was already handcuffed behind his back at the time.  Moreover, these same disputes affect resolution of whether it would have been clear to reasonable officers at the time that their use of force was excessive.

---

[4] The excessive force holding in Headwater remains good law, notwithstanding that the opinion was vacated and the case remanded.  See Santos, 287 F.3d at 855 n.11.

In light of the above, defendants are not entitled to summary judgment on plaintiff's excessive force claim.

IT IS HEREBY RECOMMENDED that:

1. Defendants' September 16, 2004 motion for summary judgment be denied; and

2. This case be referred back to the magistrate judge for further orders.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 27, 2005.

UNITED STATES MAGISTRATE JUDGE

/01; mcne2524.msj